Claude H. SHEPHERD and Eva Chapa Shepherd, Plaintiffs-Appellants,

v.

Ciro TREVINO, Tax Assessor, Collector and Registrar of Hidalgo County, et al., Defendants-Appellees.

No. 76–3258.

United States Court of Appeals, Fifth Circuit.

June 30, 1978.

Rehearing and Rehearing En Banc Denied Aug. 25, 1978.

James C. Harrington, San Juan, Tex., Melvin L. Wulf, American Civil Liberties Union, New York City, for plaintiffs-appellants.

John L. Hill, Atty. Gen. of Tex., David M. Kendall, First Asst. Atty. Gen., Austin, Tex., for defendants-appellees.

Before CLARK and GEE, Circuit Judges, and LYNNE,* District Judge.

GEE, Circuit Judge:

Plaintiffs Claude and Eva Shepherd were convicted of separate felonies in federal court and, after satisfying the terms of probation, were discharged from the court's supervision. As a result of their convictions plaintiffs were automatically disenfranchised by the State of Texas. They brought this section 1983 suit on behalf of themselves and others similarly situated, challenging a Texas statute which provides a mechanism for the reenfranchisement of convicted state felons who satisfactorily complete the terms of their probation without providing a similar mechanism for the reenfranchisement of successful federal probationers. The plaintiffs claim that the statute violates the fourteenth amendment's equal protection clause.[1] The district court dismissed plaintiffs' suit for failure to state a claim. We affirm.

The Texas Constitution disenfranchises all persons convicted of a felony "subject to such exceptions as the Legislature may make." Vernon's Ann.Tex.Const. art. VI, § 1.[2] The Texas statute implementing this constitutional provision stipulates that persons convicted of a felony may vote only if they have been "restored to full citizenship and right of suffrage, or pardoned." 9 V.A.T.S. Election Code art. 5.01.[3]

* Senior District Judge of the Northern District of Alabama, sitting by designation.

1. In their complaint, plaintiffs also claimed the statute violated the Texas Constitution; however, they have not raised that claim before this court on appeal.

2. Art. VI, § 1 of the Texas Constitution reads in part:

The following classes of persons shall not be allowed to vote in this State, to wit:

\* \* \* \* \* \*

Fourth: All persons convicted of any felony, subject to such exceptions as the Legislature may make.

3. Art. 5.01 reads, in relevant part:

The following classes of persons shall not be allowed to vote in this state:

This statute applies to persons convicted of a felony in federal as well as state court. *Hayes v. Williams,* 341 F.Supp. 182, 188 (S.D.Tex.1972). Art. 42.12, § 7 of the Texas Code of Criminal Procedure directs the Texas state courts to discharge a convicted felon who has satisfactorily fulfilled the conditions of probation. Section 7 also empowers the state courts to set aside the conviction of a discharged felon and release him "from all penalties and disabilities" resulting from his conviction.[4]

From these constitutional and statutory provisions emerges the Texas system for the disenfranchisement and reenfranchisement of convicted felons: (1) any person convicted of a felony in any court, state or federal, is automatically disenfranchised; (2) a person convicted of a felony in Texas state court and placed on probation may have his conviction set aside and be reenfranchised by the court in which he was convicted, or he may be reenfranchised by gubernatorial pardon; (3) a person convicted of a felony in federal court may be restored to suffrage only by presidential pardon. This disparity in the means of reenfranchisement is the subject of plaintiffs' challenge. Plaintiffs contend that ninety percent of the successful state probationers in Hidalgo County are reenfranchised by the court in which they were convicted. Plaintiffs aver that they are successful federal probationers who reside in Hidalgo County. They claim that Texas' creation of a reenfranchisement scheme for state probationers but not for federal probationers violates the equal protection clause of the fourteenth amendment.

In *Richardson v. Ramirez,* 418 U.S. 24, 94 S.Ct. 2655, 41 L.Ed.2d 551 (1974), the Supreme Court held that a state has the power to disenfranchise persons convicted of a felony. The California system at issue in *Richardson* was similar to the Texas system involved here. Persons convicted of felonies were disenfranchised. If they actually served any time in prison, the convicted felons could be restored to the franchise only by executive pardon. However, a person convicted of a felony in state court and placed on probation could have his conviction set aside and his right to vote restored.

The plaintiffs in *Richardson* consisted of the class of ex-felons who had served time in prison pursuant to their felony convictions and thus, under California law, could not vote. Although the Court's opinion never defines the comparison group, i. e., the group with which the plaintiffs were claiming to be similarly situated, the Court's analysis suggests that plaintiffs' claim went to the state's power to disenfranchise felons. at all. Thus, the comparison group, by implication, must have been made up of those persons eligible to vote who were similar to the members of the plaintiff class except that they had never been convicted of a felony. Although the plaintiffs in *Richardson* could have challenged the disparity between the means of reenfranchisement available to convicted felons who served time in prison and convicted felons placed on probation, they did

* * * * * *

4. All persons convicted of any felony except those restored to full citizenship and right of suffrage or pardoned.

4. Vernon's Ann.Code of Criminal Procedure, art. 42.12, § 7, reads:

At any time, after the defendant has satisfactorily completed one-third of the original probationary period or two years of probation, whichever is the lesser, the period of probation may be reduced or terminated by the court. Upon the satisfactory fulfillment of the conditions of probation, and the expiration of the period of probation, the court, by order duly entered, shall amend or modify the original sentence imposed, if necessary, to conform to the probation period and shall discharge the defendant. In case the defendant has been convicted or has entered a plea of guilty or a plea of nolo contendere, and the court has discharged the defendant hereunder, such court may set aside the verdict or permit the defendant to withdraw his plea, and shall dismiss the accusation, complaint, information or indictment against such defendant, who shall thereafter be released from all penalties and disabilities resulting from the offense or crime of which he has been convicted or to which he has pleaded guilty, except that proof of his said conviction or plea of guilty shall be made known to the court should the defendant again be convicted of any criminal offense.

not do so. Nor does it appear that the plaintiffs raised this issue before the California Supreme Court. *See Ramirez v. Brown,* 9 Cal.3d 199, 107 Cal.Rptr. 137, 507 P.2d 1345 (1973). Thus, the only issue properly before the Court was whether a state could deny the franchise to persons convicted of a felony.

The plaintiffs in *Richardson* contended, as plaintiffs do here, that the state's abridgement of their right to vote triggered strict scrutiny. The Supreme Court distinguished plaintiffs' claim from other "right to vote" claims on the ground that section 2 of the fourteenth amendment specifically refers to the state's power to disenfranchise persons convicted of a felony. Section 2 reads:

> Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State, excluding Indians not taxed. But when the right to vote at any election for the choice of electors for President and Vice President of the United States, Representatives in Congress, the Executive and Judicial officers of a State, or the members of the Legislature thereof, is denied to any of the male inhabitants of such State, being twenty-one years of age, and citizens of the United States, or in any way abridged, *except for participation in rebellion, or other crime,* the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens twenty-one years of age in such State.

(Emphasis added.) After exploring the history and the adoption of section 2, the Court concluded that the disenfranchisement of convicted felons had "an affirmative sanction" in that section and that the framers and adopters of the fourteenth amendment could not have intended to prohibit such disenfranchisement by the equal protection clause of section 1. Accordingly, the Court concluded that the disenfranchisement of convicted felons did not violate plaintiffs' right of equal protection.

Defendants contend that the instant case falls squarely within Richardson's holding that a state may distinguish between felons and nonfelons with respect to the right to vote. According to defendants, the Texas system involves only a distinction between felons and nonfelons and does not involve any distinction within the class of persons who have been convicted of a felony. Texas law disenfranchises all persons convicted of a felony and restores to the franchise only those persons whose convictions have been abrogated, whether by executive pardon or by act of the court of conviction. The defendants argue that when a court sets aside a defendant's conviction under section 7 of art. 42.12, that individual is removed from the class of persons who have been convicted of a felony, and, as a nonfelon, he is once again eligible to vote. With this understanding of Texas law in mind, the defendants claim that plaintiffs' real grievance is with the federal government, the government which convicted them, for its failure to provide for the setting aside of convictions by federal courts. They argue that since Texas is powerless to set aside a federal conviction, successful federal probationers not pardoned by the president remain convicted felons and, under *Richardson,* Texas may constitutionally deny them suffrage.

The ingenuity of this argument is matched only by its disingenuousness. When a Texas court sets aside a defendant's felony conviction, that person regains the civil rights he lost as a result of his conviction. But Texas law is not so revisionist as to declare that he has never been convicted of a felony. By its own terms, section 7 of art. 42.12 provides that proof of his conviction may be presented to the court if he is subsequently convicted of a second offense.[5] Moreover, the Texas Attorney General has ruled that a person whose conviction has been set aside cannot truthfully tell a prospective employer that he has never been convicted of a felony. *See* Op.Atty. Gen., 1970, No. M–640. *See also Gonzalez*

---

5. *See* n. 4, *supra.*

*de Lara v. United States,* 439 F.2d 1316 (5th Cir. 1971) (alien convicted of Texas drug felony deportable under federal statute providing for the deportation of aliens convicted of drug offenses despite fact that Texas court had set conviction aside). Under Texas law the main distinction between felons whose convictions have been set aside and all other felons is that the former can exercise their civil rights, including the right to vote, while the latter cannot. This distinction is the very target of plaintiffs' equal protection claim.

Plaintiffs claim that *Richardson* means only that the state can deprive felons of the right to vote. They contend that when a state grants the right to vote to some felons and denies it to others the classifications must be judged by strict scrutiny. Plaintiffs would have us analogize their situation to that in *Kramer v. Union Free School District,* 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969), where the Court stated that although a state may constitutionally provide for the appointment of school board officials rather than their election, once it decides to fill such positions by election, the denial of the vote to any group of citizens must be tested by strict scrutiny. 395 U.S. at 628–29, 89 S.Ct. 1886. *See also Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972) (right to vote fundamental).

We do not read *Richardson* to hold that the realm of state discretion in disenfranchising persons convicted of felonies is limited to the disenfranchisement of all felons or none. While a narrow reading of *Richardson* might support plaintiffs' position, several aspects of the Court's opinion lead us to conclude that section 2 of the fourteenth amendment blunts the full force of section 1's equal protection clause with respect to the voting rights of felons. First, the Court noted that it had previously "indicated approval" of a state's disenfranchisement of "some or all convicted felons." 418 U.S. at 53, 94 S.Ct. 2655. Second, the issue before the Court was whether California could deny the vote to the class of ex-felons who had completed their sentences and paroles. *See* 418 U.S. at 32 n.

10, 33, 56, 94 S.Ct. 2655. Thus, although the analysis engaged in by the Court focuses on a state's power to disenfranchise persons convicted of a felony generally, the specific holding of the Court was that a state may deny the franchise to that group of "convicted felons who have completed their sentences and paroles." 418 U.S. at 56, 94 S.Ct. at 2671. Third, the Court responded to arguments that a state should reenfranchise felons once they have served their terms by saying that such arguments should be directed to the state legislatures. 418 U.S. at 55, 94 S.Ct. 2655. Thus, the Court clearly envisioned that a state could grant the right to vote to some persons convicted of a felony while denying it to others. Section 2's express approval of the disenfranchisement of felons thus grants to the states a realm of discretion in the disenfranchisement and reenfranchisement of felons which the states do not possess with respect to limiting the franchise of other citizens. In this regard it is analogous to the twenty-first amendment, which confers on the states a limited power to restrict the exercise of first amendment freedoms in places where alcoholic beverages are served. *See, e. g., California v. La Rue,* 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972).

However, we are similarly unable to accept the proposition that section 2 removes all equal protection considerations from state-created classifications denying the right to vote to some felons while granting it to others. No one would contend that section 2 permits a state to disenfranchise all felons and then reenfranchise only those who are, say, white. Nor can we believe that section 2 would permit a state to make a completely arbitrary distinction between groups of felons with respect to the right to vote. *Cf. Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976) (twenty-first amendment does not empower states to discriminate invidiously on the basis of sex); *Hobson v. Pow,* 434 F.Supp. 362, 366–67 (N.D.Ala.1977) (disenfranchisement of one class of misdemeanants struck down as arbitrary). *See* Note, 40 Mo.L.Rev. 130 (1975). Therefore, we conclude that selec-

tive disenfranchisement or reenfranchisement of convicted felons must pass the standard level of scrutiny applied to state laws allegedly violating the equal protection clause. Such laws must bear a rational relationship to the achieving of a legitimate state interest. *See, e. g., McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961).

■ A state properly has an interest in excluding from the franchise persons who have manifested a fundamental antipathy to the criminal laws of the state or of the nation by violating those laws sufficiently important to be classed as felonies. As Judge Friendly noted in *Green v. Board of Elections,* 380 F.2d 445 (2d Cir. 1967), *cert. denied,* 389 U.S. 1048, 88 S.Ct. 768, 19 L.Ed.2d 840 (1968), such persons have breached the social contract and, like insane persons, have raised questions about their ability to vote responsibly. While such a theoretical state interest might not rise to the level of a compelling state interest, it is forceful enough to constitute a legitimate state interest.

■ The Texas system of disenfranchising and reenfranchising convicted felons gives the state courts the power to set aside these convictions and to restore the civil rights of successful state probationers. Under this system only the court which (1) tried and convicted the defendant, (2) placed him on probation, (3) supervised him during the period of probation, and (4) discharged him from further supervision upon completion of the probationary period has the discretionary power to set aside his conviction and restore his civil rights, including the right to vote. Although, as plaintiffs suggest, Texas could have established an independent agency to review applications for reenfranchisement from both successful state and successful federal probationers, such an agency could not match

the familiarity with the individual defendant and his case which the court of conviction has.[6] Perhaps more importantly, the state could not compel the federal courts or federal probation officials to turn over information about federal probationers. Since the court of conviction is in a peculiarly advantageous position to gauge the progress and rehabilitation of a convicted felon, the classifications created by the Texas system bear a rational relationship to the state's interest in limiting the franchise to responsible voters. The judgment of the district court is therefore AFFIRMED.

---

**6.** While this familiarity might not be significant if Texas routinely reenfranchised all state probationers, plaintiffs' complaint alleged only that ninety percent of the successful probationers in Hidalgo County are reenfranchised. Thus, the Texas courts clearly exercise some discretion.

