TEXAS SUPPORTERS OF WORKERS WORLD PARTY PRESIDENTIAL CANDIDATES et al., Plaintiffs,

v.

George W. STRAKE, Jr., Secretary of State et al., Defendants.

Civ. A. No. H–80–1413.

United States District Court,
S. D. Texas,
Houston Division.

Jan. 8, 1981.

Salvador Gonzales, pro se.

Susan J. Dasher, Asst. Atty. Gen., Austin, Tex., for defendants.

## MEMORANDUM AND ORDER

NORMAN W. BLACK, District Judge.

This is primarily a voting rights case. *Pro se* Plaintiffs attack various sections of Art. 5.01[1] and 5.02[2] of the Texas Election Code as unconstitutionally depriving them of the right to vote and access to the political process. They assert causes of action arising under the 1st, 8th, 14th, and 15th and 24th Amendments to the United States Constitution, and under 42 U.S.C.A. § 1971 and § 1983.

### I. *Statement of the Case.*

Plaintiffs are the Texas Supporters of Workers World Party Presidential Candidates and twenty-five named individuals. The complaint describes the "Texas Sup-

porters—" as "a statewide group of persons organized and assembled to jointly petition this court for redress of their grievances." (Complaint page 2)

The named Plaintiffs categorize themselves as follows:

1. Ex-felons:
 Salvador Gonzales
 Marcelo D. Diaz
 Raul A. Rodriguez

2. Prison inmates:
 a. federal prison:
 John V. Martinez
 George Wilson
 b. state prison:
 Johnny R. Crawford
 Rogelio Gutierrez
 Diana Lopez
 c. Nueces county jail:
 Juan Lopez

3. Welfare recipients (AFDC payments):
 Rosa Marfil
 Antonia Martinez
 Christina Gamez
 Guadalupe Gonzales
 Wanda Jo Ellerthorpe
 Maria Elena Martinez
 Irma Rodriguez
 Mary Ann Morales
 Dominga Herrera
 Lupe Medina
 Angie Rye

4. "Residents of Texas":
 Gloria Rodriguez
 Veronica N. Griffith
 David Kurt Kern
 Joanne Gavin
 Barbara Timko

---

1. Tex. Election Code Ann. Art. 5.01 (Vernon):
 "*Classes of persons not qualified to vote.*
 The following classes of persons shall not be allowed to vote in this state:
 1. Persons under 18 years of age.
 2. Idiots and lunatics.
 3. All paupers supported by the county.
 4. All persons convicted of any felony except those restored to full citizenship and right of suffrage or pardoned."

2. Tex. Election Code Ann. Art. 5.02 (Vernon):
 "*Qualification and requirements for voting.*
 (a) Every person subject to none of the foregoing disqualifications who is a citizen of the United States and a resident of this state and is eighteen years of age or older, and who has complied with the registration requirements of this code, is a qualified voter...."

The defendants are the Secretary of State of Texas, the members of the Texas Board of Pardon and Paroles, and the Governor of the State of Texas. They are sued individually and in their official capacities.

The gist of Plaintiffs' claims is as follows:

1. Art. 5.02 of the Texas Election Code is unconstitutional inasmuch as it denies the right to vote to resident aliens, both legally and illegally present in the State.

2. Art. 5.01 of the Texas Election Code is unconstitutional in that it denies the right to vote to incarcerated felons, ex-felons, and paupers. These restrictions violate the due process and equal rights clauses of the 14th Amendment, as well as the 1st, 8th and 24th Amendments, and 42 U.S.C.A. § 1971.

3. Plaintiffs S. Gonzales, R. Rodriguez, and M. Diaz further assert that their disenfranchisement as unpardoned ex-felons prevents them from running for public office at an unspecified date in the future. Their political platform would be "in the economic and social interest of persons receiving welfare or financial assistance from governmental entities, or prisoners, of unpardoned ex-prisoners, of non-citizens whether documented or undocumented, and of persons within mental institutions and of persons released therefrom." (More Definite Statement, p. 3) They believe that members of these classes of people would vote for them and are injured by not being able to do so. Various other plaintiffs state they are being denied the right to vote for Gonzales, Diaz and Rodriguez.

4. Art. 5.01 denial of the right to vote to idiots and lunatics is constitutionally void for vagueness.

5. Plaintiffs Martinez, Wilson and Gutierrez have been denied favorable parole recommendations because of their race and/or constant use of right to access to the courts.

6. The Texas Board of Pardons and Paroles and the Governor of Texas invidiously discriminate against Blacks, Chicanos and other minorities in their recommendations for full pardons, and approval thereof. This denial of pardon deprives such minority ex-felons of the restoration of their civil rights, particularly the right to vote.

Plaintiffs requested the empaneling of a three-judge court pursuant to 28 U.S.C. §§ 2281 and 2284, and to have their suit certified as a class action. They seek (1) a declaratory judgment that Art. 5.01 and 5.02 of the Texas Election Code, and the alleged practices and policies of the Governor and the Texas Board of Pardon and Paroles are unconstitutional as applied to Plaintiffs; (2) a TRO, preliminary, and permanent injunctions restraining the Defendants and their successors in office from preventing the Plaintiffs and members of their class from voting; and (3) $180,000 in damages from all named defendants to all named Plaintiffs.

On October 30, 1980, there was a full hearing in open court on Plaintiffs' application for a temporary restraining order either enjoining the general election scheduled for November 4, 1980, in Texas, or compelling the named defendants to place the Workers World Party presidential and vice presidential candidates on the Texas ballot[3] and to allow the named plaintiffs to register and vote in the November 4 election. Pointing out serious jurisdictional and standing problems in this suit, as well as unlikelihood of success on the merits, the Court refused to grant the temporary restraining order. Defendants' Motion for a More Definite Statement was granted, with the Court urging Mr. Gonzales to state facts that would give each plaintiff stand-

---

3. The Workers World Party candidates, Deirdre Griswold and Larry Holmes, submitted an affidavit that they could not collect the required 23,000 + signatures to be placed on the Texas ballot because "... many of the supporters of Workers World Party Presidential Campaign are not registered due to the fact that they either had prior felony convictions and thus barred from voting, or are welfare recipi-

ents and are intimidated to register due to Texas statutes prohibiting public charges from voting ...." The Texas Secretary of State had informed them that the signatures on the petition must be of registered voters; and further, the candidates for the electoral college must also be registered voters. (Griswold-Holmes affidavit, page 2).

ing to sue. Defendants' Motion to Dismiss would not be ruled on until the "More Definite Statement," due on November 13, was received. The Statement would be construed as an Amended Complaint. Eight additional welfare recipients were given leave to intervene as plaintiffs.

Plaintiffs filed their More Definite Statement on November 26. The Court is now ready to rule on Defendants' Motion to Dismiss.

II. *Art. 5.02—Denial of Vote to Aliens*

■ First, no named plaintiff has stated that he or she is an alien; therefore, no plaintiff has standing to assert this claim. To meet the Article III requirement for standing, a plaintiff must establish that he himself has been or is about to be injured by the enforcement of the offending statute. *See Warth v. Seldin,* 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2204–2205, 45 L.Ed.2d 343 (1975). The fact that some members of the class may have standing to raise the claim is irrelevant. A named plaintiff must have standing at the time litigation is filed. *Thurston v. Dekle,* 531 F.2d 1264, 1269 (5th Cir. 1976). *Payne v. Travenol Laboratories, Inc.,* 565 F.2d 895, 898 (5th Cir. 1978).

■ Second, the Supreme Court of the United States has consistently and unequivocally acknowledged a State's historical power to exclude aliens from participation in democratic institutions, including the right to deny aliens the right to vote or to run for elective office. *Foley v. Connellie,* 435 U.S. 291, 295–296, 98 S.Ct. 1067, 1070–1071, 55 L.Ed.2d 287 (1978). *Sugarman v. Dougall,* 413 U.S. 634, 647–649, 93 S.Ct. 2842, 2850–2851, 37 L.Ed.2d 853 (1972). Such denial can hardly be "unconstitutional" when the 14th, 15th, 24th and 26th Amendments all address "the right of *citizens* of the United States to vote."

III. *Art. 5.01—Denial of Vote to Felons and Ex-Felons.*

This issue has been recently litigated. In *Richardson v. Ramirez,* 418 U.S. 24, 94 S.Ct. 2655, 41 L.Ed.2d 551 (1974), the Supreme Court rejected an equal protection chal-

lenge identical to the one in this case and upheld the constitutionality of the California statute which denied the right to vote to convicted felons who had completed their sentences and paroles. Also see *Shepherd v. Trevino,* 575 F.2d 1110 (5th Cir. 1978), cert. denied 439 U.S. 1129, 99 S.Ct. 1047, 59 L.Ed.2d 90 (1979), which upheld the Texas system of disenfranchisement of convicted felons and the provisions for reenfranchisement as not violating equal protection rights of convicted federal felons.

■ If felons who have completed their sentences and paroles may constitutionally remain disenfranchised, it would seem axiomatic that convicted incarcerated felons may also constitutionally be deprived of their right to vote or run for elective office. "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston,* 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948). The State has a valid interest in ensuring that the rules of its society are made by those who have not shown an unwillingness to abide by those rules.

■ Federal courts are without power to entertain claims otherwise within their jurisdiction if they are insubstantial. Claims are constitutionally insubstantial if prior decisions inescapably render the claims frivolous. *Hagans v. Lavine,* 415 U.S. 528, 536–538, 94 S.Ct. 1372, 1378–1379, 39 L.Ed.2d 577 (1974). *Goosby v. Osser,* 409 U.S. 512, 518, 93 S.Ct. 854 (1973). Accordingly, Plaintiffs' claims regarding denial of the right to vote and access to the political process to aliens, to felons and to ex-felons are hereby dismissed with prejudice for lack of subject matter jurisdiction.

IV. *Art. 5.01—Denial of Right to Vote to Idiots and Lunatics.*

■ No named plaintiff has asserted he or she is an idiot or lunatic within the context of Art. 5.01 of the Texas Election Code, or that he or she is the legal guardian of such a person. None has asserted that

he or she has been or is about to be denied the right to vote because of this provision of the Election Code. The "Texas Supporters of Workers World Party Presidential Candidates" has not alleged that its members are being injured by this voter restriction. Therefore, this Court concludes that no named plaintiff has standing to challenge the provision of the Texas Election Code denying the right to vote to idiots and lunatics. *Warth v. Seldon, supra; Payne v. Travenol Laboratories, Inc., supra.*

■ A State has a fundamental interest in ensuring its voters meet minimum standards of intelligence and reasonableness. *See Oregon v. Mitchell,* 400 U.S. 112, 91 S.Ct. 260, 27 L.Ed.2d 272 (1970).

The claim that Art. 5.01's denial of the right to vote to idiots and lunatics is unconstitutional is dismissed due to lack of standing of any named plaintiff to bring such suit, and for lack of jurisdiction over this insubstantial federal question.

### V. *Art. 5.01—Denial of Vote to Paupers.*

■ Plaintiffs Antonia Martinez, Christina Gamez, Guadalupe Gonzalez, Wanda Jo Ellerthorpe, Maria Elena Martinez, Irma Rodriguez, Mary Ann Morales, Dominga Herrera, Lupe Medina, Rosa Marfil, and Angie Rye receive Aid to Families with Dependent Children (AFDC) and food stamps through the Texas Department of Human Resources. Angie Rye lives in a Section 8 rent-subsidy housing project. They assert that this reception of welfare assistance gives them standing to challenge Art. 5.01(3)'s disqualification of "paupers supported by the county." First, the plaintiffs are not "paupers" within the highly specialized meaning of Art. 5.01.[4] Second, no named plaintiff alleges that she has been refused registration as a voter because she is a welfare recipient. The allegation is only that these individuals feel "intimidated" from registering to vote merely by their knowledge that this statute exists and a fear of being prosecuted if they vote.

"A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt v. Farm Workers,* 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1978), citing *O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974). ". . . persons having no fears of state prosecution, except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs." *Babbitt, supra,* citing *Younger v. Harris,* 401 U.S. 37, 42, 91 S.Ct. 746, 749, 27 L.Ed.2d 669 (1971). "When plaintiffs 'do not claim that they have ever been threatened with prosecution, that a prosecution is likely or even that a prosecution is remotely possible,' they do not allege a dispute susceptible to resolution by a federal court." *Babbitt, supra,* citing *Younger, supra.*

Accordingly, Plaintiffs' claims that Art. 5.01's provision that paupers supported by the county not be allowed to vote is unconstitutional is dismissed with prejudice for lack of standing and for want of a justiciable controversy.

### VI. *Claims of Inmates Martinez, Wilson and Gutierrez Regarding Denial of Parole.*

The original complaint alleges:

1. that the Parole Board has "arbitrarily, irrationally, and oppressively denied them a favorable parole recommendation notwithstanding Anglo prisoners under similar circumstances have been recommended favorably by the Parole Board;" and

2. when Plaintiff Wilson was recommended by the Parole Board, "the Governor arbitrarily and capriciously denied parole for no legitimate reason other than for his constant use of his right of access to the courts." (Complaint, page 14).

As to these alleged injuries, the only relief sought by Plaintiffs is a declaratory

---

4. At the TRO hearing, the Assistant Attorney General for the State of Texas explained that this antiquated restriction refers to persons residing within county homes for the poor. He stated that no county in Texas has such an institution today. This is regarded as an "empty" class. The State alleges it is being enforced against no one in Texas at this time.

judgment that the practices and policies of the Texas Board of Pardon and Paroles and the Governor of Texas are unconstitutional, as violating the 1st, 5th, 8th, 14th, and 24th Amendments, or some number of these Amendments. It is unclear what portion, if any, of the $180,000 damages sought is in compensation for injury due to the alleged discriminatory practices, as opposed to compensation for denial of the right to vote to these incarcerated felons.[5]

■ This court may review the factors used in the recommending or granting of parole only upon a showing of arbitrariness or abuse of discretion. *Long v. Briscoe*, 568 F.2d 1119, 1120 (5th Cir. 1978), rehearing and rehearing en banc denied (1978). *Cook v. Whiteside*, 505 F.2d 32 (5th Cir. 1974). While the due process requirements in denying an expectation of parole are not so great as in a revocation of parole, *Cruz v. Skelton*, 543 F.2d 86, 89 (5th Cir. 1976), the eligible inmate is entitled to be considered for parole without invidious discrimination based on race or national origin. *Id.* at 92. Nor may a prisoner be punished or discriminated against because he has exercised his right of access to the courts. *See Ruiz v. Estelle*, 550 F.2d 238, 239 (5th Cir. 1977); *Andrade v. Hauck*, 452 F.2d 1071, 1072 (5th Cir. 1971).

■ To the extent that these prisoners seek damages, a declaratory judgment, and possibly an injunction enjoining the *prospective* denial of paroles for impermissible reasons, they may properly bring a § 1983 action. *Wolff v. McDonnell*, 418 U.S. 539, 554–555, 94 S.Ct. 2963, 2973–2974, 41 L.Ed.2d 935 (1974). However, none of these three *pro se* plaintiffs signed the original complaint or any subsequent pleading as required by Fed.R.Civ.P. 11. Plaintiff Martinez is in the federal prison in Terre Haute, Indiana. Plaintiff Wilson is in the federal prison in Memphis, Tennessee. Defendants are to be found in Austin, Texas. Therefore, it is doubtful venue would properly be in this district. Plaintiffs' claims as to the discriminatory denial of parole are dismissed without prejudice.

VII. *Claims of Ex-felons Regarding Denial of Pardon.*

Plaintiffs allege that certain blacks and Mexican-Americans have been denied full pardons solely because of their race or national origin, and thus they are unable to vote. They seem to contend that this discriminatory denial is a violation of 42 U.S.C.A. § 1971, the Voting Rights Act, as well as 42 U.S.C.A. § 1983.

■ In order to plead and prove a § 1971 cause of action, the plaintiff must show he is a citizen of the United States, *otherwise qualified by law to vote at an election*, whose right to vote has been or is about to be interfered with because of race, color, or previous condition of servitude. Antieau, *Federal Civil Rights Acts*, 2d ed., 1980, § 6.

The only plaintiffs in this case with standing to assert any such discrimination in the denial of pardon are the three ex-convicts: S. Gonzalez, Marcelo Diaz, and Raul A. Rodriguez. Yet these plaintiffs do not possess one of the prerequisites to asserting a § 1971 cause of action: they are not "otherwise qualified" to vote. The constitutionality of disenfranchising convicted felons has been established. *Richardson v. Ramirez, supra.* These three plaintiffs do not fall within the class of persons § 1971 was designed to protect.

Section 1971 was passed by Congress to enforce the Fifteenth Amendment which protects the right to vote regardless of race from any denial or abridgement by the United States or by any State. *United States v. Mississippi*, 380 U.S. 128, 138, 85 S.Ct. 808, 813, 13 L.Ed.2d 717 (1965). Voting Rights cases have uniformly dealt with statutes, policies, practices or individual acts which have as their *primary* object or effect the denial of the right to vote. *See, e. g., United States v. Mississippi*, 380 U.S.

---

5. Plaintiffs Martinez, Wilson and Gutierrez's claim of unconstitutional denial of the right to vote has been dismissed in III above.

128, 85 S.Ct. 808, 13 L.Ed.2d 717 (1965) (enactment of discriminatory statutes requiring potential voters to explain sections of state constitution, plus "good moral character," unconstitutional). *Louisiana v. United States*, 380 U.S. 145, 85 S.Ct. 817, 13 L.Ed.2d 709 (1965) ("interpretation" of State or Federal Constitution requirement for registration to vote invalid). *Oregon v. Mitchell*, 400 U.S. 112, 91 S.Ct. 260, 27 L.Ed.2d 272 (1970). *Ballas v. Symm*, 494 F.2d 1167 (5th Cir. 1974); *Wilson v. Symm*, 341 F.Supp. 8 (S.D.Tex.1972) (Student voting rights cases). *United States v. Saint Landry Parish School Board*, 601 F.2d 859 (5th Cir. 1979) (Voters driven to polls and their vote cast by poll commissioners). *Whatley v. Clark*, 482 F.2d 1230 (5th Cir. 1973) (Texas Election Code presumption of non-residency unconstitutional). *Toney v. White*, 476 F.2d 203 (5th Cir. 1973) (selective removal of black registrants from voter rolls). *United States v. Atkins*, 323 F.2d 733 (5th Cir. 1963) (racial discrimination in registering otherwise qualified voters to vote). *James v. Humphreys County Board of Election Commissioners*, 384 F.Supp. 114 (N.D.Miss.1974) (poll watchers for black candidates excluded from polling places; illiterate black voters refused assistance).

■ The Voting Rights Act establishes a right and provides a federal remedy where the denial of that right to vote or the dilution of one's vote is the *direct* and most immediate effect of discriminatory laws, devices or actions. Assuming the validity of plaintiffs' charges regarding the recommending or granting of pardons by the Texas Board of Pardon and Paroles and the Governor of Texas, the inability to vote is but a secondary and incidental effect of such discriminatory denial. It is one of several important repercussions, including the right to be admitted to certain professions, to hold certain types of jobs, to possess a firearm, not to mention the social and personal effects of not being pardoned. If Plaintiffs Gonzalez, Diaz, Rodriguez, and others in their class have indeed been denied a pardon solely or primarily because of their race or national origin, any remedy available under the Voting Rights Act would not afford them the complete relief to which they are entitled. An order compelling their registration as voters would provide only partial relief. On the other hand, a remedy fashioned under 42 U.S.C. § 1983 could remove all the legal disabilities resulting from their status as unpardoned ex-felons, including their inability to vote.

■ Plaintiffs S. Gonzales, M. Diaz and R. Rodriguez admit that they have not formally applied for a full pardon; however they believe any attempt to secure a pardon would be futile because of the alleged discriminatory practices of the Defendants. (More Definite Statement, p. 3) Because such injury is speculative, these Plaintiffs lack standing to assert a cause of action based on a specific denial of pardon at this time. For these reasons, the claims of Gonzales, Diaz and Rodriguez alleging a cause of action under either 42 U.S.C. § 1971 or § 1983 are dismissed for lack of standing.

VIII. *Request for a Three-Judge Panel.*

Plaintiffs asked for a three-judge panel, under 28 U.S.C. § 2281 and § 2284. Section 2281, providing for a three-judge panel when the constitutionality of a State statute was challenged, was repealed in 1976, P.L. 94–381. 90 Stat. 1119 (1976). Some Voting Rights cases still require a three-judge court, but no plaintiff has stated a cause of action under the Voting Rights Act. The request for a three-judge panel is denied. *United States v. Saint Landry Parish School Board*, 601 F.2d 859, 863 (5th Cir. 1979).

IX. *Lack of Standing of Texas "Residents" and "Consumers".*

Plaintiffs Gloria Rodriguez, D. K. Kern, V. Griffith, J. Gavin, and B. Timko, identify themselves in the original complaint only as "Texas residents".

In the "More Definite Statement," Plaintiffs Gloria Rodriguez, J. Gavin, and B. Timko assert standing as taxpayers and consumers who would vote for various other named plaintiffs if they were allowed to run for office. This Court has no jurisdic-

tion over "generalized grievances" shared in substantially equal measure by all or a large class of citizens. *Warth v. Seldin, supra,* 422 U.S. at 499, 95 S.Ct. at 2205. These Plaintiffs do not cite any case construing the right to vote as including the right to have legally unqualified candidates placed on the ballot so that one may vote for them. Plaintiffs also do not refer the Court to any case giving "consumers" standing to challenge election laws. Standing is conferred upon a "taxpayer" as such only when there is a logical nexus between the taxpayer status asserted and the claim sought to be adjudicated. *Schlesinger v. Reservists to Stop the War,* 418 U.S. 208, 228, 94 S.Ct. 2925, 2935, 41 L.Ed.2d 706. *Flast v. Cohen,* 392 U.S. 83, 102–103, 88 S.Ct. 1942, 1953–1954, 20 L.Ed.2d 947 (1968).

The taxpayer must be challenging an exercise of power under the taxing and spending clause, and alleging that the challenged enactment exceeds constitutional limitations imposed upon the exercise of the taxing and spending power. *Flast v. Cohen, supra.* Plaintiffs can generally not rest their claim to relief on the legal rights or interests of third parties. *Warth v. Seldin, supra.* Plaintiffs who vote have no standing to bring a class action in behalf of any one who allegedly has been denied the right to vote. *Hubbard v. Ammerman,* 465 F.2d 1169, 1182 (5th Cir. 1972), citing *Hamer v. Campbell,* 358 F.2d 215 (5th Cir. 1966). Therefore, to the extent that any plaintiffs have attempted to challenge the Texas election laws or the practices of Defendants by identifying themselves as taxpayers, consumers, or merely residents of Texas, they lack standing and all such claims are dismissed.

Such questions of wide public significance as Plaintiffs raise in this suit are more appropriately addressed to the legislative branch of the state and federal governments. See *Warth v. Seldin, supra,* 422 U.S. at 500, 95 S.Ct. at 2206. *Schlesinger v. Reservists to Stop the War, supra,* 418 U.S. at 222, 94 S.Ct. at 2932–2933.

In summary, all claims of all plaintiffs are dismissed for the reasons stated above.