**George L. WILLIAMS, Plaintiff-Appellant,**

v.

**John TAYLOR, et al., Defendants-Appellees.**

No. 81–4188.

United States Court of Appeals, Fifth Circuit.

June 4, 1982.

---

Willie L. Rose, North MS Rural Legal Services, Lawrence Young, Lexington, Miss., for plaintiff-appellant.

John B. Farese, Ashland, Miss., for defendants-appellees.

Before CLARK, Chief Judge, THORNBERRY and GARZA, Circuit Judges.

THORNBERRY, Circuit Judge:

The central inquiry before this court is whether summary disposition of appellant's claim of selective disenfranchisement under 42 U.S.C. §§ 1983, 1985 was appropriate. The district court granted summary judgment for the Marshall County Board of Election Commissioners because it found that appellant was not entitled to vote under any circumstances. It accepted the Commissioners' contention that they revoked appellant's voting rights solely because he was a convicted felon within the class of felons prohibited from voting by the Mississippi Legislature. Miss.Code Ann. § 23–5–35. Appellant George L. Williams, a black resident of Marshall County, Mississippi, insists that the Commissioners disenfranchised him because of his race and his political association with the Northern Mississippi United League in violation of his rights to due process and equal protection under the Fourteenth Amendment. Having studied the evidence available at this stage in the proceedings in light of applicable legal doctrine, we hold that the district court should not have granted summary judgment.

I. FACTS

Appellant was a registered voter of Marshall County from 1962 to 1979. On August 23, 1979, the Election Board, composed of

three black members and two white members, disenfranchised appellant after the circuit clerk of the county, Lucy Carpenter, informed the Board that appellant had been convicted of grand larceny in Panola County in 1967.[1] Section 23–5–35, Miss.Code Ann., provides in part that a person who has been convicted of burglary, theft, or obtaining money or goods under false pretenses "shall not be registered, or, if registered, the name of such person shall be erased from the registration book on which it may be found by the registrar or by the election commissioners."

Though appellant is a felon under Section 23–5–35, the procedure which led to his disenfranchisement is not that established by the Mississippi legislature. Under Mississippi law, the circuit clerk of each county is required to prepare and maintain a complete list of persons who are convicted of any crimes enumerated in § 23–5–35. The list includes persons convicted of crimes in the clerk's county and persons *officially* reported to him by any justice of the peace or mayor of any other town or city where a felon is convicted and no appeal is taken. Miss.Code Ann. § 23–5–37. The law then requires the clerk of each county to compare the list of felons with the registration books before the Election Board. The legislature obviously intended this procedure to accomplish the automatic and consistent disenfranchisement of all felons in the county.

The record does not explain specifically how the clerk and the commissioners learned of appellant's conviction. Appellant claims that several of the commissioners knew of his conviction many years before they disenfranchised him. The commissioners maintain, however, that they did not find out about his conviction until the circuit clerk told them. The circuit clerk stated in deposition that she discovered the conviction after someone left records of his conviction at the courthouse. Appellant believes that this "someone" was the Mayor of Holly Springs, who was retaliating against appellant because appellant, acting as pre-

cinct captain, prevented the Mayor from voting in the wrong precinct. Regardless of how the commissioners learned of appellant's conviction or how long they were aware of it, it seems clear from the record that the disenfranchisement of appellant was not accordant with the procedure established in § 23–5–37, nor was it part of any unofficial mechanism which consistently eliminated the names of felons from the registration lists. The record suggests that prior to appellant's disenfranchisement, the Election Board had removed the voting rights of only a few individuals because of their felony convictions.

Appellant admits that he is within the class of felons described in § 23–5–35, and he admits that the Election Board has the power to disenfranchise him if it follows the procedures created by the Mississippi legislature. Appellant objects to the manner in which the Election Board in Marshall County operates because, he claims, it permits discriminatory and arbitrary enforcement. To prove his claim, appellant points to other felons in the community who have not been disenfranchised although they fall within the statute. The Commissioners' actions after appellant brought this lawsuit tend to support his contention. Knowing the basis of this lawsuit, they requested the circuit clerk to compile a list of names of persons who had been convicted of a felony after 1976, the year which marks the beginning of the commissioners' term of office. The circuit clerk discovered fifty-six names of persons who had been convicted after 1976. The Election Board voted to strike these persons from the registration lists on July 31, 1980, but the record does not show whether they actually carried out their intention. It also does not reveal the number of felons presently voting in Marshall County who, like appellant, were convicted of felonies prior to 1976, and it does not explain whether it was possible for the Election Board to find out if there were felons in the county with convictions preceding 1976.

1. Appellant served three months of his two-    year sentence.

The kind of notice appellant received after the Election Board disenfranchised him appears equally unclear to this court. Appellant claims that he did not find out about the Board's action until he went to vote. The Commissioners claim that appellant learned of his disenfranchisement immediately after it happened. Ms. Carpenter, the circuit clerk, stated that she sent appellant a form letter which explained the action taken by the Board and notified appellant that procedures for reinstatement existed. In any event, appellant did not request a hearing before the Election Board after he learned of its action, and he did not try to obtain a pardon from the governor of Mississippi before proceeding in federal court.

Though appellant raises six points of error on this appeal, his arguments reduce to three. First, he attacks the failure of the Election Board to accord him notice and a hearing before it disenfranchised him. Second, he claims that the Board's action against him was unconstitutionally selective. Finally, he submits that the procedure for obtaining a pardon in Mississippi constitutes an irrebuttable presumption, and in the alternative, that pardons are granted arbitrarily. We hold that summary judgment was appropriate on the first and third claims, but we reverse and remand for a trial on appellant's claim of selective disenfranchisement.

## II. STANDARD OF REVIEW

■ The familiar standard for granting and denying summary judgment need not be discussed at length here for it is a litany recited in nearly every decision that confronts the issue. We note simply that it is proper only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We recognize that Rule 56(c) generally requires the moving party to prove his right to judgment with such clarity that the nonmoving party cannot recover under any discernible circumstance. *Jones v. Western Geophysical Co. of America*, 669 F.2d 280, 282 (5th Cir. 1982); *Joplin v. Bias*, 631 F.2d 1235, 1237 (5th Cir. 1980).

## III. PROCEDURAL DUE PROCESS CLAIM

Appellant argues that the Mississippi disenfranchisement procedure is unconstitutional on its face because it does not guarantee the convicted felon notice of a pending disenfranchisement and an opportunity to be heard before any action is taken. Appellant contends that if he had received notice and a hearing he would have asserted a statute of limitations defense to the disenfranchisement proceedings.

■ Due process "is not a technical conception with a fixed content unrelated to time, place, and circumstances." *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). It calls for "such procedural protections as the particular situation demands." *Id.* Under *Mathews v. Eldridge*, due process depends on three factors: first, the private interests involved; second, the risk of erroneous deprivation of these interests through the procedures used, and the probable value of additional procedures; and third, the government's interest, including the fiscal and administrative burden that additional procedures would entail. 424 U.S. at 335, 96 S.Ct. at 903; *Central Freight Lines, Inc. v. United States*, 669 F.2d 1063, 1068 (5th Cir. 1982). Furthermore, proof of a denial of due process may require a showing of substantial prejudice. *E.g., United States v. Lober*, 630 F.2d 335, 337 (5th Cir. 1980).

■ Appellant's interest in retaining his right to vote is constitutionally distinguishable from the "right to vote" claims of individuals who are not felons. *See Shepherd v. Trevino*, 575 F.2d 1110, 1112 (5th Cir. 1978), *cert. denied*, 439 U.S. 1129, 99 S.Ct. 1047, 59 L.Ed.2d 90 (1979). Section 2 of the Fourteenth Amendment allows a state to prohibit a felon from voting, and its classification of felons for voting restrictions must bear only a rational relation to the achieving of a legitimate state interest. *Id.* at 1115. Moreover, the Supreme Court has upheld registration procedures fundamentally identical to the Mississippi system.

*Richardson v. Ramirez*, 418 U.S. 24, 94 S.Ct. 2655, 2659, 41 L.Ed.2d 551 (1974).

■ Given the nature of appellant's interest, we find that the probable value of additional procedures is slight, especially when we consider that the primary function of notice and a hearing is to ensure that the Election Board has identified the right person. Present statutory procedures adequately serve this purpose. After an elector is denied registration, he may appeal to the Board of Election Commissioners. Miss.Code Ann. § 23–5–59. The Board can subpoena testimony and compel the production of documents to determine whether an elector was improperly denied the right to vote. Miss.Code Ann. § 23–5–63. If the elector is dissatisfied after his hearing before the Board, he can appeal to the state circuit and supreme courts. §§ 23–5–63 to 23–5–69. Appellant does not contend that this procedure prevents nonfelons from voting or that it reaches felons who have received a pardon from the governor. There is no evidence in the record to justify such an assumption, even remotely. Under these circumstances, we refuse to impose the requirement of a pre-disenfranchisement hearing on election boards. To mandate a hearing as a prerequisite to any action by the Election Board would cost the state substantial time and money, and it would not guarantee, any more than the current mechanism, that only felons within the statute are disenfranchised.

■ Moreover, we cannot see how appellant can claim prejudice in the denial of a pre-disenfranchisement hearing. His sole reason for demanding a hearing—to present a statute of limitations defense—is a spurious argument on its face. He relies on § 15–1–49, the residual statute of limitations in Mississippi, which bars commencement of causes of action six years after the cause accrues. His reliance is fundamentally misplaced because automatic disenfranchisement is not a "cause of action"—a proceeding in a court of justice which determines the rights and liabilities of adverse parties. Thus, the residual limitations period is not applicable. Furthermore, even if we assume that the limitations period in § 15–1–49 constitutes a viable defense to disenfranchisement, appellant had the opportunity to raise this claim in a hearing before the Board after he learned of its action, but he chose to disregard the avenues of procedural protection afforded by the state. Any prejudice flowing from the denial of a hearing, therefore, would be attributable to his own failure to act.

Under these circumstances, we hold that appellant's due process claim to a pre-disenfranchisement hearing is without merit as a matter of law and affirm the grant of summary judgment on this issue.

## IV. SELECTIVE DISENFRANCHISEMENT

■ Appellant's selective enforcement claim is resolved less easily. Though we cannot understand clearly from the record why the district court rejected this argument, our reading of the affidavits and depositions mandates a remand for trial on this issue. Appellant's selective disenfranchisement claim has two aspects. First, he maintains that the Board impermissibly selects blacks for disenfranchisement. Second, he objects to the failure of the Board to follow the statutory procedures in Miss.Code Ann. §§ 23–5–35, 23–5–37. It is the district court's inattention to the second aspect of his argument which proves most troublesome to this court.

■ The Election Commissioners cannot discriminate arbitrarily among felons who fall within the group classified for mandatory disenfranchisement in § 23–5–35. The Supreme Court clearly recognized this principle in *Ramirez, supra*, when it remanded the case exactly because "[t]he California court did not reach respondents' alternative contention that there was such a total lack of uniformity in county election officials' enforcement of the challenged state laws as to work a separate denial of equal protection." 418 U.S. at 57, 94 S.Ct. at 2671. Approving the Texas disenfranchisement procedures, this court in *Shepherd v. Trevino, supra*, recognized the prohibition on se-

lective enforcement: "[W]e are similarly unable to accept the proposition that section 2 removes all equal protection considerations from the state-created classifications denying the right to vote to some felons while granting it to others. No one would contend that section 2 permits a state to disenfranchise all felons and then re-enfranchise only those who are, say, white. Nor can we believe that section 2 would permit a state to make a completely arbitrary distinction between groups of felons with respect to the right to vote." 575 F.2d at 1114.

A state may make a completely arbitrary distinction between groups of felons so as to work a denial of equal protection with respect to the right to vote when it administers a statute, fair on its face, with an unequal hand. *See Yick Wo v. Hopkins*, 118 U.S. 356, 370–74, 6 S.Ct. 1064, 1071–73, 30 L.Ed. 220 (1886). While equal protection does not mean that a state must treat all persons identically, it nevertheless demands that when the state draws distinctions between similarly situated individuals it must show that the distinction is rational, not arbitrary. *See Stanton v. Stanton*, 421 U.S. 7, 14, 95 S.Ct. 1373, 1377–78, 43 L.Ed.2d 688 (1975).

In this case, the Election Board has not followed the official procedure for disenfranchising felons. Its noncompliance with statutory procedures may have created a pattern of selective enforcement. Prior to the disenfranchisement of appellant, the Board apparently had acted only against a few individuals. Moreover, the record suggests that in Marshall County today there are many felons who, like appellant, were convicted before 1976, but unlike appellant, they continue to possess their right to vote. The sole reason given by the Board to explain its inaction against felons with pre-1976 convictions is the fact that it took office in 1976. The Commissioners do not argue that they were unable to discover the names of these felons because they were not serving on the Board when the convictions occurred, and there is no language in the statutes to imply that the Commissioners are only responsible for the felons convicted during their tenure.

In *Zeigler v. Jackson*, 638 F.2d 776, 779 (5th Cir. 1981), this court addressed official conduct that is similar to the Commissioners' actions. Leo Zeigler sued the Alabama Peace Officer Standards and Training Commission because it terminated his employment after he committed two misdemeanors involving the use of force. The Alabama Peace Officer Standards and Training Commission Act, Ala.Code § 36–21–46, prohibited anyone from becoming a police officer who had been convicted of a felony or a misdemeanor involving either force, violence or moral turpitude. The state clearly can require such minimum fitness standards of its peace officers, and Zeigler undoubtedly fell within the statutory prohibition. Yet, Zeigler, like appellant, objected to the Commission's action because it had not terminated other individuals convicted of similar or more serious crimes when it acted against appellant. 638 F.2d at 778–79.

Reversing the district court's finding that Zeigler's termination was reasonably justified and supported by the evidence, this court held: "The Commission has failed to offer a rational justification for the differential treatment accorded to Zeigler, who was discharged, and the three police officers who were retained. Since the other officers equally subject to the character requirement were not denied employment because of their convictions, the Commission's termination of Zeigler violated his right to equal protection of the law." *Id.* at 779. It did not matter to the court in *Zeigler* that the appellant had no right to be a police officer. The "right" at issue was the right not to be subject to restrictions when other similarly situated persons escape the prohibition without legal justification.[2]

2. *See also Gosney v. Sonora Independent School District*, 603 F.2d 522, 526–27 (5th Cir. 1979), where the court held that the school district violated equal protection rights of two of its teachers by strictly enforcing employment contract provisions, which were otherwise valid, against the plaintiffs and not

We conclude that appellant should be given a chance to prove his claim of selective and arbitrary enforcement of the disenfranchisement procedure. While he has no right to vote as a convicted felon under § 23–5–35, he has the right not to be the arbitrary target of the Board's enforcement of the statute. We prefer to reverse for trial on this issue, rather than reach the merits at this point in the proceedings, because the transcript of the hearing on appellee's motion for summary judgment convinces us that despite appellant's presentation of the issue, the district court did not examine it before granting summary judgment for the Commissioners. Thus, the issue may not have been fully considered by the court or the Commissioners. The central issue of fact to be addressed by the district court on remand is whether there are other electors in the county who should be disqualified from voting under § 23–5–35, and if this group exists, whether the Election Board can establish a rational justification for intentionally selecting appellant from among this group. *See Zeigler v. Jackson, supra,* 638 F.2d at 778–79, and *Shepherd v. Trevino, supra,* 575 F.2d at 1115.

Obviously, if the evidence at trial shows that the group of felons who have not been disenfranchised are white, then it will tend to support appellant's assertion of racial discrimination. The factual points relating to proof of this part of appellant's claim are disputed. Appellant's affidavit asserts that he knows felons who have not been disenfranchised who are white and who do not share his political beliefs. He also claims that certain members of the Election Board knew of his felony conviction for many years and acted only when his political activities became controversial. The Election Board denies both racial and retaliatory motives. The district court must resolve this factual disagreement after a more complete exploration of the issue.[3]

■ If the district court finds that the Election Board has selectively enforced § 23–5–35 in an unconstitutional manner, it cannot order the Board to reinfranchise appellant since that would be contrary to a legitimate state prohibition. The sole relief appellant can obtain from the court below is the fair and consistent enforcement of the statute against all felons who fall within it.

## V. CONCLUSION

Finally, we address appellant's contention that the pardon procedure in Mississippi operates in such a way as to create an irrebuttable presumption against felons in violation of appellant's rights to due process and equal protection under law. Appellant argues in the alternative that the governor and the state legislature administer pardons in an arbitrary and capricious manner in violation of his due process rights under the Fourteenth Amendment. We hold that the district court properly granted summary judgment on both claims.

■ Appellant's attack on the pardon procedure is invalid because he lacks standing. Section 99–19–35, Miss.Code Ann., allows a disenfranchised felon to vote if he obtains a full pardon from the governor as provided in Section 124, Art. V, of the Mississippi Constitution. There is no evidence to show that appellant tried to procure a pardon from the governor or that he would have been rejected had he bothered to apply. Nor is there any competent evidence to support appellant's assertion that only the rich and influential in the state are able to obtain pardons. Under these circumstances, it is impossible for this court to find that appellant has personally suffered the requisite injury in fact necessary to confer standing. *See Warth v. Seldin,* 422 U.S. 490, 501–03, 95 S.Ct. 2197, 2206–07, 45 L.Ed.2d 343 (1975); *Brown v. Sibley,* 650 F.2d 760, 771 (5th Cir. 1981); *Finch v. Mis-*

---

against other teachers who were violating the same contract provision.

**3.** This court has deemed summary judgment inappropriate when there has been a potential-

ly inadequate factual presentation. *See Jones v. Western Geophysical Co. of America,* 669 F.2d 280 (5th Cir. 1982).

**518**

sissippi State Medical Association, Inc., 585 F.2d 765, 771 (5th Cir. 1978).

 Furthermore, appellant's argument based on the irrebuttable presumption doctrine, when stripped of its legalese, is an attack on the state's ability to determine that felons should not be allowed to vote.[4] Since the Supreme Court and this court have upheld the state's power to classify felons separately with respect to the right to vote, as having an affirmative sanction in § 2 of the Fourteenth Amendment, *see Ramirez, supra*, 418 U.S. at 55, 94 S.Ct. at 2671, and *Shepherd v. Trevino, supra*, 575 F.2d at 1112–15, appellant's argument must fail.

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment on appellant's procedural due process claims, but REMAND for a trial on his contention that the Election Board has selectively enforced § 23–5–35 in violation of his right to equal protection under law.

---

**4.** An irrebuttable presumption in a statute classifies a person for a burden or a benefit without determining the individual merit of their claims. *See Weinberger v. Salfi*, 422 U.S. 749, 769–73, 95 S.Ct. 2457, 2469–70, 45 L.Ed.2d 522 (1975); *Vlandis v. Kline*, 412 U.S. 441, 446–53, 93 S.Ct. 2230, 2233–37, 37 L.Ed.2d 63 (1973). Its constitutionality rests on an equal protection analysis.