**Paul B. OWENS, Appellant,**

v.

**William BARNES, Dauphin County Bureau of Elections, Appellee,**

**Commonwealth of Pennsylvania, Intervenor.**

No. 82–3207.

United States Court of Appeals, Third Circuit.

Argued March 8, 1983.

Decided June 30, 1983.

Certiorari Denied Nov. 7, 1983. See 104 S.Ct. 400.

Joseph A. Torregrossa (argued), Jessica S. Jones, Andrew T. Baxter, Philadelphia, Pa., for appellant.

Robert L. Knupp, Graf, Knupp & Andrews, Harrisburg, Pa., for appellee.

LeRoy S. Zimmerman, Atty. Gen., Francis R. Filipi, Deputy Atty. Gen., Chief, Crim. Justice Agencies, Gregory R. Neuhauser, Deputy Atty. Gen. (argued), Harrisburg, Pa., for intervenor.

Before SEITZ, Chief Judge, and HIGGINBOTHAM and SLOVITER, Circuit Judges.

**OPINION OF THE COURT**

SLOVITER, Circuit Judge.

Plaintiff, convicted of a third-degree felony under Pennsylvania law, is currently incarcerated in a Pennsylvania institution.

He filed this action under 42 U.S.C. § 1983 claiming that the Pennsylvania Election Code violates the Equal Protection Clause of the Fourteenth Amendment by denying incarcerated convicted felons an absentee ballot which, in effect, disenfranchises them.[1]

Plaintiff concedes that Pennsylvania could constitutionally disenfranchise all convicted felons.[2] That concession is compelled by the decision in *Richardson v. Ramirez,* 418 U.S. 24, 94 S.Ct. 2655, 41 L.Ed.2d 551 (1974). In *Richardson,* the Court considered not only the language of the Equal Protection Clause contained in § 1 of the Fourteenth Amendment but also the language of the less familiar § 2 of that amendment which provides for reduced representation "when the right to vote at any election . . . is denied . . . or in any way abridged, *except for participation in rebellion, or other crime* " (emphasis supplied).[3] After reviewing the history relating to the adoption of that section, the Court rested its conclusion that the state may disenfranchise felons on

"the demonstrably sound proposition that § 1, in dealing with voting rights as it does, could not have been meant to bar outright a form of disenfranchisement which was expressly exempted from the less drastic sanction of reduced representation which § 2 imposed for other forms of disenfranchisement." *Id.* at 55, 94 S.Ct. at 2671.

Plaintiff, however, argues that while Pennsylvania could choose to disenfranchise all convicted felons, it has not done so; unincarcerated convicted felons, such as those who have been sentenced to probation or released on parole, may vote.[4] Plaintiff claims that the distinction made between incarcerated and unincarcerated felons violates equal protection. He argues that because the right to vote is fundamental, the classification must withstand strict scrutiny; in the alternative, he argues the classification is not even rationally related to a legitimate state interest.

It has not been seriously contended that *Richardson* precludes any equal protection analysis when the state legislates regarding

---

1. The Pennsylvania Election Code does not explicitly disenfranchise convicted felons. The section dealing with absentee ballots provides:

   [T]he words "qualified absentee elector" shall in nowise be construed to include persons confined in a penal institution or a mental institution. . . .

   25 Pa.Stat. §§ 2602(w)(12), 3146.1. The Pennsylvania Supreme Court has construed the absentee ballot provision as legislative action defining qualified electors. *Ray v. Commonwealth,* 442 Pa. 606, 609, 276 A.2d 509, 510 (1971). As so interpreted, the Pennsylvania statute differs from the Tennessee statute construed in *Tate v. Collins,* 496 F.Supp. 205, 208 (W.D.Tenn.1980), on which plaintiff relies, which all parties conceded gave the prisoners at issue the right to vote.

2. The Pennsylvania Attorney General has construed the decision in *O'Brien v. Skinner,* 414 U.S. 524, 94 S.Ct. 740, 38 L.Ed.2d 702 (1974), to require providing absentee ballots to incarcerated misdemeanants and pretrial detainees. *See* 1974 Op.Att'y.Gen. No. 47. This is not at issue here and we express no view on this interpretation of *O'Brien.*

3. The full text of § 2 of the Fourteenth Amendment is as follows:

   Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State, excluding Indians not taxed. But when the right to vote at any election for the choice of electors for President and Vice President of the United States, Representatives in Congress, the Executive and Judicial officers of a State, or the members of the Legislature thereof, is denied to any of the male inhabitants of such State, being twenty-one years of age, and citizens of the United States, or in any way abridged, except for participation in rebellion, or other crime, the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens twenty-one years of age in such State.

4. The Commonwealth gives no support for its argument that convicted felons should be regarded as "confined in a penal institution" as long as they are under "lawful sentence" irrespective of whether they are incarcerated. Brief for Intervenor at 14. The statutory words "confined in a penal institution" could not be clearer and we see no reason to twist them out of their natural meaning by the Commonwealth's strained interpretation. Further, the published Attorney General's Opinion states that "the Election Code permits a convicted felon who has served his sentence or who is free on probation to appear personally and register and vote." 1974 Op.Att'y.Gen. No. 47, at 187–88.

the voting rights of felons. In the first place, in *Richardson* itself the Court acknowledged that unequal enforcement, if proven, could be unconstitutional and remanded so that the California courts could consider the claim "that there was such a total lack of uniformity in county election officials' enforcement of the challenged state laws as to work a separate denial of equal protection...." 418 U.S. at 56, 94 S.Ct. at 2671. Secondly, while there have been differing views as to whether there is any equal protection scrutiny of the state's selection of disenfranchising offenses, *compare* the separate opinions in the in banc decision in *Allen v. Ellisor,* 664 F.2d 391 (4th Cir.), *vacated to consider mootness in light of new statute,* 454 U.S. 807, 102 S.Ct. 80, 70 L.Ed.2d 76 (1981), it is generally accepted that the state may not otherwise classify on a wholly arbitrary basis. *See Shepherd v. Trevino,* 575 F.2d 1110, 1114–15 (5th Cir.1978), *cert. denied,* 439 U.S. 1129, 99 S.Ct. 1047, 59 L.Ed.2d 90 (1979). Disenfranchisement distinctions among prisoners made on the basis of race are precluded by the Fifteenth Amendment, but the Equal Protection Clause in § 1 of the Fourteenth Amendment must be relied on to protect prisoners against invidious distinctions based on sex or other arbitrary classifications. Thus, the Commonwealth conceded at oral argument that the state could not disenfranchise similarly situated blue-eyed felons but not brown-eyed felons. It follows that the Equal Protection Clause remains applicable, even after *Richardson,* to some voting classifications affecting convicted felons.

In this case, plaintiff makes no claim of unequal enforcement nor of any discrimination among those felons who are incarcerated. Instead, plaintiff claims that because the right to vote is "fundamental" Pennsylvania cannot abridge or limit it on the basis of incarceration without showing that classification is necessary to promote a compelling state interest.

■ Plaintiff's argument fails because the right of convicted felons to vote is not "fundamental". That was precisely the argument rejected in *Richardson.* In that case, plaintiffs relied on decisions invalidating state-imposed restrictions on the franchise as violative of the Equal Protection Clause, such as *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972), *Bullock v. Carter,* 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972), *Kramer v. Union Free School District,* 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969), and *Cipriano v. City of Houma,* 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969), to support their argument that a state must show a "compelling state interest" to justify exclusion of ex-felons from the franchise. The Court rejected that argument, holding that state laws disenfranchising felons are, because of the express language of § 2 as well as its history, distinguished "from those other state limitations on the franchise which have been held invalid under the Equal Protection Clause by this Court." 418 U.S. at 54, 94 S.Ct. at 2671. It follows that the standard of equal protection scrutiny to be applied when the state makes classifications relating to disenfranchisement of felons is the traditional rational basis standard. *Accord Williams v. Taylor,* 677 F.2d 510, 514 (5th Cir.1982); *Shepherd v. Trevino,* 575 F.2d at 1114–15. *Contra Hobson v. Pow,* 434 F.Supp. 362, 366 (N.D.Ala.1977).

In summary, the state can not only disenfranchise all convicted felons but it can also distinguish among them provided that such distinction is rationally related to a legitimate state interest.[5]

■ It remains only to consider whether Pennsylvania's voting scheme which permits unincarcerated felons to vote but denies that right to incarcerated felons satisfies this level of scrutiny. We are not bound by the state's inexplicable failure to provide in its brief any rationale for such distinction, *see Murillo v. Bambrick,* 681 F.2d 898, 908 n. 20 (3d Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 378, 74 L.Ed.2d 511 (1982), because we believe the basis is apparent on its face. The Court recently reiterated its earlier statement that "Law-

---

**5.** We need not decide the standard to be applied were the distinction made on a basis, such as sex or national origin, which ordinarily evokes a heightened level of scrutiny.

ful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlining our penal system." *Hewitt v. Helms,* —— U.S. ——, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983) (quoting *Price v. Johnston,* 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948)). The state could rationally decide that one of the losses, in addition to the basic deprivation of liberty, to which a prisoner who is incarcerated should be subject is that of participation in the democratic process which governs those who are at liberty. At the same time, Pennsylvania could rationally determine that those convicted felons who had served their debt to society and had been released from prison or whose crimes were not serious enough to warrant incarceration in the first instance stand on a different footing from those felons who required incarceration, and should therefore be entitled to participate in the voting process.

For the foregoing reasons, we will affirm the decision of the district court dismissing plaintiff's complaint for failure to state a claim.