**David Andrew WOODRUFF; Bryon Six, Plaintiffs–Appellants,**

v.

**State of WYOMING; Jim Geringer, Wyoming Governor, Defendants– Appellees.**

No. 01–8078.

United States Court of Appeals, Tenth Circuit.

Oct. 7, 2002.

David Andrew Woodruff, Byron Six, Rawlins, WY, for Plaintiff–Appellant.

Hoke MacMillan, Attorney General, Office of the Attorney General, Cheyenne, WY, for Defendant–Appellee.

Before KELLY, McKAY, and MURPHY, Circuit Judges.*

* After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R.App. P. 34(a); 10th Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

**ORDER AND JUDGMENT**[**]

PAUL KELLY, Jr., Circuit Judge.

Plaintiffs–Appellants David Woodruff and Bryon Six, inmates appearing pro se, seek to appeal the district court's order dismissing their civil rights complaint brought under 42 U.S.C. § 1983. The Plaintiffs asserted that Wyo. Stat. § 6–10–106, which denies the right to vote to convicted felons, violated their constitutional rights and sought damages and declaratory relief for such violations. The district court dismissed the action for failure to state a claim upon which relief could be granted and as frivolous. *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(ii). We affirm as to Mr. Woodruff and dismiss Mr. Six's appeal.

Section 6–10–106 provides that "[a] person convicted of a felony is incompetent to be an elector [defined in § 22–1–102(a)(xxvi) as, generally, all Wyoming citizens of voting age not otherwise disqualified]." A Wyoming statute does provide a mechanism for convicted felons to re-qualify as electors, *see* Wyo. Stat. § 7–13–105, but that statute only applies after the prison term has ended or after probation. The Plaintiffs brought their § 1983 action challenging § 106 on the ground that it violates: (1) their Eighth Amendment right and their Wyoming constitutional right to be free from cruel and unusual punishment; (2) their equal protection rights under the Fourteenth Amendment and under the Wyoming Constitution; (3) their federal and state rights to due process; and (4) various other provisions of the United States and Wyoming Constitutions.

The district court dismissed the claim after concluding that Plaintiffs had provided no support for their claims. In addition, the district court relied on *Richardson v. Ramirez,* 418 U.S. 24, 56, 94 S.Ct. 2655, 41 L.Ed.2d 551 (1974), to conclude that disenfranchising felons did not violate the Equal Protection Clause of the Fourteenth Amendment.

Before addressing the issues the Plaintiffs raise in this appeal, we must address two jurisdictional issues that have been referred to us. We first address whether Mr. Woodruff timely filed an initial notice of appeal. The district court's order dismissing the action was entered on August 24, 2001. The district court docketed Mr. Woodruff's notice of appeal as being filed on September 26, 2001, two days beyond the thirty-day deadline for filing the notice. Fed. R.App. P. 4(a)(1)(A). In their opening brief, the Plaintiffs state that Mr. Woodruff placed his notice of appeal in the institutional mailbox on September 24, 2001, and note that this was sworn to in the initial notice of appeal. In a separate order granting the Plaintiffs' motion to file a belated notice of appeal, discussed *infra,* the district court concluded that Mr. Woodruff placed the notice of appeal in the prison mailbox on September 24, 2001. Given that no contrary facts appear in the record, we conclude that Mr. Woodruff did deposit the notice of appeal in the prison mailbox on September 24, 2001, and, as a result, he timely filed his notice of appeal. *See* Fed. R.App. P. 4(c) (stating that a pro se prisoner's notice of appeal is deemed filed when it is delivered to prison officials for forwarding to the district court).

The second jurisdictional issue involves Mr. Six's failure to sign the notice of appeal that Mr. Woodruff filed on September 24, 2001. On October 3, 2001, we granted

---

[**] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Mr. Six a fourteen day extension to file a signed notice of appeal. *See* Fed. R.App. P. 4(a)(3) (allowing a party to file a notice of appeal within fourteen days after the date another party files a notice of appeal). On November 1, 2001, Mr. Woodruff filed a Motion to File Belated Notice of Appeal on behalf of himself and Mr. Six alleging that delay in the prison mail system prevented Mr. Woodruff from receiving a signed notice of appeal from Mr. Six. The district court granted the motion and allowed Mr. Six to file a signed notice of appeal by December 17, 2001, which Mr. Six filed.

■ Putting aside the extension of time we granted on October 3, Mr. Six had until October 10 to file his notice of appeal. *See* Fed. R.App. P. 4(c)(2) (allowing an inmate to file a notice of appeal within fourteen days from the date when the district court dockets the notice of appeal of another party). Mr. Six therefore had until November 9 to file for an extension of time to file his notice of appeal. *See* Fed. R.App. P. 4(a)(5)(A) (providing for a 30–day extension of time where excusable neglect or good cause is shown). The district court concluded that Mr. Six showed good cause for his failure to file a timely notice of appeal; thus, Mr. Six met the requirements of Rule 4(a)(5)(A). We agree with the district court. However, Mr. Six has not paid the appellate filing fee or filed a

motion to proceed on appeal without prepayment of costs or fees. Accordingly, we dismiss his appeal. Absent payment of the full filing fee; where there are multiple inmates who sign a notice of appeal, at a minimum each must file a motion for leave to proceed on appeal without prepayment of costs or fees.[1] 28 U.S.C. § 1915(a)(2); (b)(1).

■ Mr. Woodruff raises the following issues on appeal: (1) Section 2 of the Fourteenth Amendment should not be construed to allow disenfranchisement of the Appellants in violation of their equal protection rights; (2) the district court's *sua sponte* dismissal of the complaint violated his right to due process; and (3) because the complaint did not address prison conditions, the dismissal of his case should not count as a strike under 28 U.S.C. § 1915(g).

Mr. Woodruff challenges the district court's reliance on *Richardson* in concluding that Wyoming could constitutionally disenfranchise them. In *Richardson*, the Supreme Court stated that "the exclusion of felons from the vote has an affirmative sanction in § 2 of the Fourteenth Amendment," and that,

> [section 1 of the Fourteenth Amendment], in dealing with voting rights as it does, could not have been meant to bar outright a form of disenfranchisement which was expressly exempted from the

---

1. The Prison Litigation Reform Act (PLRA) "does not specify how fees are to be assessed when multiple prisoners constitute the plaintiffs or appellants." *In re Prison Litigation Reform Act*, 105 F.3d 1131, 1137 (6th Cir. 1997). We have no occasion to decide whether the PLRA permits multi-plaintiff actions or requires full payment of the filing fee from each inmate in the case of a jointly-filed notice of appeal. *Compare Hubbard v. Haley*, 262 F.3d 1194, 1197–98 (11th Cir.2001) (no multi-plaintiff actions and each inmate must pay the full amount of the appellate filing fee), *cert. denied*, —— U.S. ——, 122 S.Ct. 1083, 151 L.Ed.2d 983 (2002) *with In re Prison Litigation Reform Act*, 105 F.3d at 1138 ("any fees and costs that the district court or the court of appeals may impose shall be equally divided among all the prisoners"); *Burke v. Helman*, 208 F.R.D. 246 (C.D.Ill.2002) (each inmate not required to pay entire filing fee in multi-plaintiff action). Here, the record indicates that no request was made by Mr. Six to proceed without prepayment of fees or costs, so we need not decide any apportionment issues—Mr. Woodruff is responsible for the full amount of the fee.

less drastic sanction of reduced representation which § 2 imposed for other forms of disenfranchisement.

*Richardson,* 418 U.S. at 54—55, 94 S.Ct. 2655.[2] Mr. Woodruff expends more than a few pages in the brief explaining how the history behind § 2 shows that *Richardson* was wrong to the extent it held § 2 preempted the Equal Protection Clause. Indeed, the Supreme Court made it clear in *Hunter v. Underwood,* 471 U.S. 222, 105 S.Ct. 1916, 85 L.Ed.2d 222 (1985), that § 2 "was not designed to permit [ ] purposeful racial discrimination ... which otherwise violates § 1 of the Fourteenth Amendment." *Id.* at 233, 105 S.Ct. 1916. The Supreme Court cited *Richardson* in 1996 for the proposition that "a convicted felon may be denied the right to vote." *Romer v. Evans,* 517 U.S. 620, 634, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996).

The problem with Mr. Woodruff's argument is that nowhere in his complaint does he allege that he is part of any suspect class. He alleges only that § 106 causes unfair treatment to inmates. It is well-settled, however, that prisoners do not constitute a suspect class. *See Carson v. Johnson,* 112 F.3d 818, 821—22 (5th Cir. 1997). As such, § 106 could only violate the Equal Protection Clause if it bears no rational relationship to a legitimate state interest. *See McGowan v. Maryland,* 366 U.S. 420, 425–26, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). The interest of a state in disenfranchising convicted felons was discussed in *Richardson,* as well as in a number of circuit decisions. *See Richardson,* 418 U.S. at 52—54, 94 S.Ct. 2655; *Baker v. Cuomo,* 58 F.3d 814, 819–22 (2d Cir.1995), *vacated in part on other grounds, Baker v. Pataki,* 85 F.3d 919 (2d Cir.1996) (en banc); *Wesley v. Collins,* 791 F.2d 1255,

1261—62 (6th Cir.1986); *Owens v. Barnes,* 711 F.2d 25, 26—28 (3d Cir.1983); *Green v. Bd. of Elections,* 380 F.2d 445 (2d Cir. 1967). As Judge Friendly noted in *Green,*

> [I]t can scarcely be deemed unreasonable for a state to decide that perpetrators of serious crimes shall not take part in electing the legislators who make the laws, the executives who enforce these, the prosecutors who must try them for further violations, or the judges who are to consider their cases.

*Id.* at 451. We conclude that Mr. Woodruff's equal protection argument has no merit.

 As to the remaining arguments, we addressed the constitutionality of 28 U.S.C. § 1915(e)(2) in *Curley v. Perry,* 246 F.3d 1278, 1283—84 (10th Cir.2001), and concluded that it did not violate a prisoner's due process rights. Finally, despite Mr. Woodruff's insistence that Congress passed the "three strikes" provision of § 1915(g) with specific regard to prison condition litigation, the plain language of that statute does not limit itself to that particular type of litigation, nor does it provide any exception. *See United States v. Ron Pair Enters.,* 489 U.S. 235, 240—41, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) ("[A]s long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute."). We therefore reject Mr. Woodruff's remaining arguments.

Accordingly, we AFFIRM the district court and GRANT Mr. Woodruff's renewed application to proceed without prepayment of the appellate filing fee. We DENY Mr. Woodruff's "Objection to the Court" seeking to have the panel overrule

---

**2.** Section 2 of the Fourteenth Amendment provides for reduction of a state's representation when that state disenfranchises eligible voters, except where the disenfranchisement is due to "participation in rebellion, or other crime." U.S. Const. amend XIV, § 2.

a prior order of the Clerk. The district court's dismissal under 28 U.S.C. § 1915(e)(2)(B) counts as a single strike against Mr. Woodruff and Mr. Six. *See Jennings v. Natrona County Det. Ctr. Med. Facility,* 175 F.3d 775, 780 (10th Cir.1999). Mr. Woodruff is obligated to continue making partial payments until the entire fee has been paid.