

NUMBER 13-08-00345-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

JOE LEE RUBIO,                                                  **Appellant,**

**v.**

EDUARDO CAMPIRANO, SECRETARY
OF THE TEXAS SOUTHMOST COLLEGE
DISTRICT, AND THE BOARD OF TRUSTEES
OF TEXAS SOUTHMOST COLLEGE DISTRICT,            **Appellees.**

On appeal from the 107th District Court
of Cameron County, Texas.

# MEMORANDUM OPINION

Before Justices Garza, Benavides, and Vela
Memorandum Opinion by Justice Benavides

Appellant, Joe Lee Rubio, appeals the denial of an injunction which would have required his inclusion on the ballot for a trustee position in the 2008 Texas Southmost College District Board of Trustees election. By four issues, Rubio asserts that: (1) a foreign conviction cannot deprive him of his civil right under the United States and Texas Constitutions to run for political office; (2) a foreign conviction cannot constitute a "final conviction" for the purposes of election code section 141.001(a)(4); (3) Rubio was "released from any resulting disabilities" when he completed his sentence related to his foreign conviction; and (4) a "judicial determination" was not final when his name was removed from the ballot. We affirm.

## I. BACKGROUND

In 1995, Rubio, a United States citizen, was convicted of transportation of marihuana in Mexico. A Mexican court sentenced Rubio to ten years in prison, and he served approximately six years in a Mexican penitentiary. On August 27, 2001, pursuant to a United States-Mexico treaty on prisoner transfer,[1] Rubio was transferred

---

[1] The treaty, signed in 1976, allowed for the transfer of prisoners between the U.S. and Mexico to serve their sentences in their country of citizenship. The treaty, in relevant part, provides that:

> The United States of America and the United Mexican States, desiring to render mutual assistance in combating crime insofar as the effects of such crime extend beyond their borders and to provide better administration of justice by adopting methods furthering the offender's social rehabilitation, have resolved to conclude a Treaty on the execution of penal sentences . . . .
>
> . . . .
>
> Sentences imposed in the United Mexican States on nationals of the United States of America may be served in penal institutions or subject to the supervision of the authorities of the United States of America in accordance with the provisions of this Treaty.

to the United States. In connection with this transfer, the United States Parole Commission determined that Rubio's foreign conviction was most similar to the felony of "Possession with Intent to Distribute a Controlled Substance," a class E felony. *See* 21 U.S.C.A. § 841(a)(1) (2006) (providing that "it shall be unlawful for any person knowingly or intentionally . . . possess with intent to manufacture, distribute, or dispense, a controlled substance. . . ."); *see also* 18 U.S.C.A. § 3559(a)(5) (2006) (denoting a class "E" felony as a crime meriting less than five years' imprisonment but more than one year). Specifically, the Parole Commission made the following finding in Rubio's Transfer Treaty Determination:

> The Commission finds that the foreign offense is most similar to Possession with Intent to Distribute a Controlled Substance . . . . It is further found that a period of supervised release of 3 to 5 years is applicable.

> The Commission orders that the transferree be released on the record after the service of 72 months on 8-28-2001 . . . foreign labor credits and good conduct time (if any) will be deducted from this release date determination pursuant to Bureau of Prisons Procedures.

Rubio served some time at the LaTuna Federal Correctional Institution in Anthony, Texas before he was released on a supervised release. He served a supervised release term from August 28, 2001 to March 7, 2003 until all proceedings related to this conviction were dismissed.

In 2006, Rubio filed an application to run as a candidate for Place 1 of the Texas Southmost College District (TSC) Board of Trustees election. At that time, TSC sought an opinion from the Office of the Attorney General of Texas to determine Rubio's

Treaty on the Execution of Penal Sentences, U.S.-Mex., November 25, 1976, 28 U.S.T. LEXIS 7399.

eligibility for office. The Attorney General, through an informal advisory opinion, opined that Rubio was ineligible to run for office. Rubio withdrew his request for candidacy. However, on February 15, 2008, Rubio again filed an application to run for TSC trustee. Relying on the Office of the Attorney General's 2006 advice and Rubio's Transfer Treaty Determination, TSC's Secretary, Edward Campirano, wrote Rubio a formal letter stating that he was ineligible to run under section 145.003 of the Texas Election Code.

In response, Rubio filed a motion for temporary restraining order and a motion for temporary injunction to prevent TSC from withholding his name from the ballot. After a hearing on the temporary injunction, the trial court made the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. Plaintiff was convicted of Transportation of Mari[h]uana in Mexico and sentenced to serve ten years in prison.

2. The crime of Transportation of Mari[h]uana in Mexico is a "serious offense" under Mexican law.

3. A "serious offense" under Mexican law is equivalent to a felony under Texas law.

4. Plaintiff has not been pardoned, or otherwise had the disabilities of his conviction removed.

5. Public records in the official records of Texas Southmost College District conclusively establish that Plaintiff was convicted of Transportation of Mari[h]uana in Mexico.

6. Eduardo Campirano, Secretary of the Board of Trustees of Texas Southmost College District, declared Plaintiff ineligible to run for or serve on the Board of Trustees, based on public records presented to him.

4

7. Eduardo Campirano, Secretary of the Board of Trustees of Texas Southmost College District, acted within the scope of his duties when he declared Plaintiff ineligible to run for or serve on the Board of Trustees.

8. The Board of Trustees of Texas Southmost College District passed a resolution declaring Plaintiff ineligible, based on public records conclusively establishing Plaintiff's [in]eligibility.

CONCLUSIONS OF LAW

1. Section 145.003 of the Texas Election Code requires the electing authority to declare a candidate ineligible, if public records conclusively establish his ineligibility.

2. Pursuant to Texas Election Code § 141.001, Plaintiff is ineligible to run for or serve on the Board of Trustees of Texas Southmost College District.

3. Defendants acted appropriately and correctly, pursuant to Texas Election Code § 145.003, by declaring Plaintiff ineligible to be a candidate for the position of Trustee of Texas Southmost College District.

The trial court denied the injunction, and this appeal followed.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

Whether to grant or deny a temporary injunction is within the trial court's sound discretion. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). A reviewing court should reverse an order granting or denying injunctive relief only if the trial court abused its discretion. *Id.* (citing *Walling v. Metcalfe*, 863 S.W.2d 56, 578 (Tex. 1993)). An abuse of discretion occurs when the trial court misapplies the law to the established facts. *State v. Sw. Bell Tel. Co.*, 526 S.W.2d 526, 528 (Tex. 1975). The reviewing court must not substitute its judgment for the trial court's judgment unless the trial court's

5

action was so arbitrary that it exceeded the bounds of reasonable discretion. *Butnaru*, 84 S.W.3d at 204.[2]

### III.  ANALYSIS

### A.  The Effect of a Foreign Conviction on Election Code § 141.001(a)(4)[3]

By his second issue, Rubio argues that that a foreign conviction cannot constitute a "final conviction" for the purposes of election code section 141.001(a)(4).  Section 140.001 states that, "to be eligible to be a candidate for, or elected or appointed to, a public elective office in this state, a person must . . . have not been finally convicted of a felony from which the person has not been pardoned or otherwise released from the resulting disabilities."  TEX. ELEC. CODE ANN. § 141.001(a)(4) (Vernon 2010).

In a treaty transfer pursuant to section 4106 of title 18 of the United States Code, the United States Parole Commission "translates the foreign sentence into what is in reality a 'sentence' comparable to that for a domestic offender convicted of a similar

---

[2] Appellees propose an additional standard of review: they argue that TSC's administrative interpretation of the Texas Election Code should be afforded *Chevron* deference.  *See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984).  "Under *Chevron*, courts accord deference to an interpretation of a statute adopted by the agency that has been charged by Congress with responsibility for administering this provision."  *De La Mota v. U.S. Dep't of Ed.*, 412 F.3d 71, 79 (2nd Circ. 2005) (internal citations omitted).  However, we hold that *Chevron* is inapplicable in this circumstance because TSC was not necessarily "charged" by the legislature with administering state election code; the Texas Secretary of State is the state agency charged with this endeavor. Accordingly, we conclude that an abuse of discretion standard is appropriate in this circumstance.

[3] Appellees contend that this issue is moot, as the results from this election were finalized in 2008.  "The law is clear that a challenge to the candidacy of an individual becomes moot 'when any right which might be determined by the judicial tribunal could not be effectuated in the manner provided by law.'" *In re Sherman*, 2010 Tex. App. LEXIS 761, at *2 (Tex. App.–Houston [1st Dist.] Feb. 3, 2010) (orig. proceeding) (quoting *Polk v. Davidson*, 145 Tex. 200, 196 S.W.2d 632, 634 (Tex. 1946) (orig. proceeding)).  However, because this appeal arises from Rubio's second attempt to run for office as a TSC trustee, we address this issue to provide clarity for Rubio's future actions.

6

offense." *Bennett v. U.S. Parole Comm'n*, 83 F.3d 324, 327 (10th Cir. 1996) (citing

*Trevino-Casares v. U.S. Parole Comm'n*, 992 F.2d 1068 (10th Cir. 1993)).

> [E]ven though the statute speaks of the Commission's determination as the specification of a "release date and a period and conditions of supervised release," § 4106A(b)(1)(A), it is in procedure, substance, and effect tantamount to the imposition of a federal sentence, and it should, for all practical purposes, be treated as such.

*Bennett*, 83 F.3d at 327 (citing *Trevino-Casares*, 992 F.2d at 1069 (footnote omitted)).

Here, Rubio's Transfer Treaty Determination indicates that the U.S. Parole Commission determined that the equivalent of his Mexican final conviction was a class E federal felony offense in the United States. In fact, 18 U.S.C.A. § 4106A requires a determination be made for sentencing purposes "*as though the offender were convicted in a United States District Court of a similar offense.*" 18 U.S.C.A. § 4106A (1990) (emphasis added). The record also shows that after Rubio was transferred to the United States, he served some time at the LaTuna Federal Correctional Institution in Anthony, Texas before he was released on a supervised release. His supervised release lasted from August 28, 2001 until March 7, 2003. Under *Bennett*, Rubio's limited time served at LaTuna Federal Correctional Institution, combined with his three-year supervised release, could be considered "in procedure, substance, and effect tantamount to . . . a federal sentence." 83 F.3d at 327. In light of the foregoing, we hold that the trial court did not abuse its discretion when it pronounced Rubio's foreign conviction constituted a "final conviction" under election code section 140.001(a)(4). *See Butnaru*, 84 S.W.3d at 204.

7

Our conclusion that it was within the trial court's broad discretion to deem Rubio's foreign conviction a final conviction is further supported by the analysis and conclusions of an informal opinion letter rendered by Texas Attorney General Greg Abbott in 2006. Letter from Tex. Att'y Gen. to Hon. Eddie Lucio, Jr. (May 1, 2006). Although the opinions of the Texas Attorney General are not controlling on state courts, such opinions may be considered as persuasive authority, and in this matter, we find the opinion persuasive. *See Holmes v. Morales*, 924 S.W.2d 920, 924 (Tex. 1996); *see also HEB Ministries, Inc. v. Tex. Higher Educ. Coordinating Bd.*, 235 S.W.3d 627, 661 n.148 (Tex. 2007); *Comm'rs Court v. Agan*, 940 S.W.2d 77, 82 (Tex. 1997); *Bass v. Aransas County Indep. Sch. Dist.*, 389 S.W.2d 165, 176 (Tex. Civ. App.–Corpus Christi 1965, writ ref'd n.r.e.) ("Opinions of the Attorney General are not binding upon the courts, and are not judicial precedents, but are persuasive and entitled to consideration.").

The question posed to the Texas Attorney General was whether Rubio's "conviction and imprisonment in Mexico, together with his transfer to the United States jurisdiction and the court's imposition of supervised release, renders him ineligible to serve on the board of trustees." The attorney general concluded that, "under the terms of section 141.001(a)(4) of the Election Code, [Rubio] is not eligible to be elected or appointed to the Board of Trustees of the Texas Southmost College District." Based on the record before us, we agree. The trial court reasonably determined that Rubio was not eligible for candidacy in the 2008 TSC Board of Trustees election. Accordingly, we overrule Rubio's second issue.

8

**B.    The Effect of Foreign Convictions on Civil Rights**

Having determined that the trial court did not abuse its discretion when it held that Rubio's foreign conviction constituted a final conviction in Texas, we address Rubio's first issue, wherein he complains that this holding would violate his fundamental civil right to run for elected office.  He argues that the right to be a candidate for political office is protected by both the First and Fourteenth Amendments of the United States Constitution.

The Equal Protection Clause of the Fourteenth Amendment, as applied to the states, guards against invidious discrimination.  *See* U.S. CONST. amend. XIV; *Hatten v. Rains*, 854 F.2d 687, 690 (5th Cir. 1988).  This amendment invalidates classifications that disadvantage a particular group or deprive a certain class of people their fundamental rights.  *Hatten*, 854 F.3d at 690.  "Classifications which 'impermissibly interfere with the exercise of a fundamental right or operate[] to the peculiar disadvantage of a suspect class are subjected to strict judicial scrutiny, meaning that they must constitute the least restrictive means to achieve a compelling state interest."  *Id.* (citing *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976)).  Classifications that disadvantage a quasi-suspect class are subject to intermediate scrutiny, and "must bear a significant relationship to an important state end."  *Id.*  All other classifications must only bear a rational relationship to a legitimate legislative end.  *Id.*

Felons are not a suspect or quasi-suspect class.  *Hilliard v. Ferguson*, 30 F.3d 649, 652 (5th Cir. 1994) ("convicted felons are not a constitutionally protected suspect

9

class"). Therefore, Texas's restriction of felons from running for office only needs to bear a rational relationship to a legitimate state end. *See id.* As appellees note in their brief, the Fifth Circuit has not directly addressed the issue of why Texas would exclude felons from running for office. The Fifth Circuit has, however, addressed why convicted felons should not vote: "a state properly has an interest in excluding from the franchise persons who have manifested a fundamental antipathy" to criminal laws "by violating those laws sufficiently important to be classed as felonies." *Shepherd v. Trevino*, 575 F.2d 1110, 1115 (5th Cir. 1978). Felons "have breached the social contract and . . . have raised questions about their ability to vote responsibly." *Id.* This reasoning can easily explain why a state would exclude felons from running for political office, as well. Texas has a legitimate legislative reason to prevent persons "who have manifested a fundamental antipathy" to law from enacting or enforcing the laws, as elected officials must do—particularly those charged with educating young persons. Accordingly, we hold that section 141.001(a)(4) of the election code, which prohibits persons finally convicted of felonies from being candidates for public office, does not violate Rubio's Fourteenth Amendment rights.

Rubio also argues that section 141.001(a)(4) somehow violates his fundamental First Amendment right of political association. *See* U.S. CONST. amend. I. However, "there is no fundamental right to be a candidate." *Hatten*, 854 F.2d at 693; *Plante v. Gonzalez*, 575 F.2d 119, 1126 (5th Cir. 1978). For all of these reasons, we overrule Rubio's first issue.

10

## C.    Completion of the Sentence

By his third issue, Rubio contends that he was "released from any resulting disabilities" when he completed his sentence related to his foreign conviction, and thus, should have the right to run for office.  However, Rubio cites no case law or authority, and we find none, which supports this contention.  Furthermore, we note that the Texas Code of Criminal Procedure provides a mechanism by which to "restore" civil rights, but that Rubio would not be entitled to utilize this mechanism by virtue of his crime:

> Art. 48.05.  RESTORATION OF CIVIL RIGHTS. (a)(1) An individual convicted of an offense described by Subdivision (2) of this subsection may, except as provided by Subsection (b) of this article, submit an application for restoration of any civil rights forfeited under the laws of this state as a result of the conviction.
>
> (2) This article applies to:
>
> (A) a federal offense, other than an offense involving:
>
> (i) violence or the threat of violence;
>
> (ii) drugs; or
>
> (iii) firearms; and
>
> (B) *an offense under the laws of another country, other than an offense involving*:
>
> (i) violence or the threat of violence;
>
> (ii) *drugs*; or
>
> (iii) firearms, if the elements of the offense are substantially similar to elements of an offense under the laws of this state punishable as a felony.

11

TEX. CODE CRIM. PROC. ANN. art. 48.05 (Vernon 2006) (emphasis added). Thus, the Texas Legislature has expressly prohibited persons who have been convicted of foreign offenses related to violence, drugs, or firearms from applying for the restoration of certain civil rights. Because Rubio was convicted of a drug-related crime in Mexico, he is unable to avail himself of this remedy.[4]

As we find no authority for Rubio's contention that he was "released from any resulting disabilities" when he completed the supervised release for this treaty transfer, we overrule Rubio's third issue.

## D. The Finality of the Judicial Determination

By his fourth issue, Rubio argues he should have been on the ballot for the TSC Board of Trustees election in 2008 because the trial court had not ruled on the date the ballots were prepared. We note, however, that this issue is now moot. "The law is clear that a challenge to the candidacy of an individual becomes moot 'when any right which might be determined by the judicial tribunal could not be effectuated in the manner provided by law.'" *In re Sherman*, 2010 Tex. App. LEXIS 761, at *2 (Tex. App.— Houston [1st Dist.] Feb. 3, 2010) (orig. proceeding) (quoting *Polk v. Davidson*, 145 Tex. 200, 196 S.W.2d 632, 634 (Tex. 1946) (orig. proceeding)). "If a challenge to a candidate's eligibility 'cannot be tried and a final decree entered in time for compliance with pre-election statutes by officials charged with the duty of preparing for the holding

---

[4] We note that this statute reinforces our finding that the trial court did not abuse its discretion when it declared Rubio ineligible to run for office. The plain language of article 48.05 of the code of criminal procedure clearly demonstrates that the Texas Legislature considers foreign convictions final for purposes of determining certain civil rights.

12

of the election,' we must dismiss the challenge as moot." *In re Sherman*, 2010 Tex. App. LEXIS 761, at *2 (quoting *Smith v. Crawford*, 747 S.W.2d 938, 940 (Tex. App.—Dallas 1988, orig. proceeding)). Because this ballot issue refers to an event "no longer in controversy", *see Nat'l Collegiate Athletic Ass'n v. Jones*, 1 S.W.3d 83, 86 (Tex. 1999), we overrule Rubio's fourth issue.

## IV. CONCLUSION

Because we have overruled all of Rubio's issues on appeal, we affirm.

_____
GINA M. BENAVIDES,
Justice

Delivered and filed the
17th day of March, 2011.

13